UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOBBY WHITE,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>PFEIFFER, et al.,<br><br>　　　　Defendants. | 1:19-cv-01786-NONE-GSA-PC<br><br>**ORDER DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM, WITH LEAVE TO AMEND**<br>**(ECF No. 1.)**<br><br>**THIRTY-DAY DEADLINE TO FILE FIRST AMENDED COMPLAINT NOT EXCEEDING 25 PAGES** |

**I.　BACKGROUND**

Bobby White ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. On December 23, 2019, Plaintiff filed the Complaint commencing this action. (ECF No. 1.)

Plaintiff's Complaint is now before the court for screening. 28 U.S.C. § 1915.

**II.　SCREENING REQUIREMENT**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall

dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

### III.   SUMMARY OF COMPLAINT

Plaintiff is presently incarcerated at Salinas Valley State Prison in Soledad, California, in the custody of the California Department of Corrections and Rehabilitation (CDCR). The events at issue in the Complaint allegedly took place at Kern Valley State Prison (KVSP) in Delano, California. Plaintiff names as defendants Christian Pfeiffer (Warden), Sergeant Badger (Facility C EOP Program), Connie Gibson (Director of Adult Operations, CDCR), Doe #1 (Facility C Captain), Does #2 and 3 (Facility C, Bldg. 7 Correctional Officers), Doe #4 (Facility C, Bldg. 7 Control Tower Officer), Doe #5 (Facility C, I&E, Escorting Officer), Doe #6 (Facility C, EOP Program Psychologist Supervisor), Doe #7 (Facility C Correctional Lieutenant), and Does #8 and 9 (Correctional Counselors II, KVSP) (collectively, "Defendants").

Plaintiff's allegations follow: On or about October 12, 2018, when releasing inmates for medications in C-Section (EOP[1] Section) of Housing Building #7, the floor officers yelled at the

---

[1] Enhanced Outpatient Program, a high level outpatient psychiatric care program offered at CDCR.

Control Tower Officer to just release everyone for medication. Plaintiff exited his cell to get in line for medication when two inmates (cellmates) came out of their cell and started yelling, "Two Five (25), Duce-Five." (ECF No. 1 at 11 ¶ 10.) Even though staff heard this they did nothing, even knowing that: (1) these two inmates were not EOP; and, (2) were part of a violent CDCR STG-II prison gang well-known and documented by CDCR Officials. The two inmates yelled "Two Five" again, approached Plaintiff and pulled out a stabbing weapon. (Id.)

The two STG-II inmates started chasing Plaintiff around the section while staff stood around enjoying the assault. Plaintiff was assaulted and stabbed, and only then did floor staff and the Control Tower hit the alarm and respond. Even though staff observed and witnessed the assault and stabbing, and Plaintiff was already prone-down, an escorting responding officer pepper sprayed Plaintiff.

Defendants (Big 7 officers and escorting officer) laughed at Plaintiff for running, telling Plaintiff he should have fought the "Two-Fivers" so they could bet on the fight. Plaintiff was transported to Kern Medical due to the stab wound in his left paraspinal thoracic region. Plaintiff was returned to Building #7 and had to suffer continual clowning around by Defendants.

Defendants failed to protect Plaintiff knowing it was common knowledge and documented fact that STG-II prison gangs, especially "Two-Five" members, are violent and assault and stab LGBT inmates and EOP inmates. It was Defendants' written and underground policy to house STG-II inmates and STG-II "Two-Fivers" in the Lower Yard Buildings #1 and #4, and in Facility D, where EOP inmates were not allowed to be housed due to the victimizations.

It is Defendants' and CDCR's statewide policy not to house EOP inmates with non-EOP inmates, not to house violent known STG-II prison gang members with EOP or DDP[2] inmates, and not to house LGBT inmate populations in specific prisons and yards in attempts to minimize assaults, rapes, and victimizations. Defendants, knowing that the two inmates were STG-II documented "Two-Fivers" with a history of violence and attacking LGBT and EOP inmates,

---

[2] CDCR's Developmental Disability Program. 15 CCR § 3317.

deliberately disregarded this danger and released these individuals on October 11, 2018 and allowed them to be housed among EOP and LGBT inmates.

This assault and stabbing could and should have been prevented had Defendants followed protocol.  They were fully aware of these inmates' violence and documented prison gang affiliation, and elected to disregard it and place other inmates' lives and safety in danger.  This act led to Plaintiff being stabbed.

After filing 602 log no. KVSP-18-03203, and participating in a video-taped interview for failure to protect (Staff Complaint) and requesting the names and badge numbers of all staff involved, Defendants John Does #1 to #7 started retaliating against Plaintiff.  Plaintiff was threatened that if he continued to attempt filing 602s against staff or his missing property, that they would place Plaintiff in the Lower Yard while the "Two-Fivers" from Building #4 were at yard, and that they would tell the "Two-Fivers" that Plaintiff was ratting on the two inmates that stabbed him.

KVSP is known to the CDCR inmate population for officers paying prison gangs and setting up or encouraging fights and assaults for the officers' entertainment, and for teaching an inmate a lesson for either filing 602s against them or participating in an investigation relating to officers.  Plaintiff has personal knowledge of the ongoing assaults by staff on inmates, using STG-II prison gang members by asking them to assault another LGBT inmate that the officers felt had disrespected them.

When finally a threat was made directly by a Correctional Lieutenant in front of other Defendants, Plaintiff believed they would carry out their threat of getting Plaintiff assaulted or stabbed again.  Plaintiff did not file a 602 for retaliation, as he had just been stabbed.  The real possibility of being stabbed again silenced him.  Not only did Plaintiff lose $1,040.00 worth of personal property because of retaliation, but the clowning around by the officer and threat made if Plaintiff complained was terrifying to Plaintiff.  Plaintiff reported some of his fears to his clinician and the EOP supervisor, but Plaintiff was told they don't get involved in custody issues.

Defendants John Does #1 to #7 were alerted that the two inmate "Two-Fivers" were in an assaultive stance when they came out of their cell yelling "Two-Five," but Defendants did

nothing to control the inmates, instead allowing these inmates to chase and stab Plaintiff before taking action. Defendants' deliberate indifference to Plaintiff's or other EOP inmates' safety is sadly a common practice by CDCR and its employees. The defendant simply didn't care to prevent harm to EOP and LGBT inmates by STG-II inmates.

Plaintiff falls into two different classes of inmates: (1) EOP inmate, and (2) LGBT inmate. Defendants have testified in state courts about STG-II prison gang violence and the conduct of these gang members toward specific targeted inmates – here EOPs or LGBTs. For this reason, CDCR and the Coleman case receiver have a policy of not housing EOP inmates with STG-II gang members.

Here, Defendants knew of these individuals' violent behavior and status as "Two-Fiver' gang members, because the day before the Institution Classification Committee reviewed their prison files. Defendants are fully aware that STG-II prison gang members view EOP inmates as weak, not conforming to prison rules (politics), and LGBT inmates are viewed as a disgrace to prison gang life. Defendants have been aware, and their policy has been not to house EOP inmates with STG-II inmates. The CDCR houses STG-II members in separate buildings or yards, and Defendants know of the substantial risks of serious harm to EOP and LGBT inmates at the hands of prison gangs STG-II, especially "Two-Fivers." Defendants knew of long-standing, pervasive and well-documented risks, yet deliberately disregarded those risks causing Plaintiff to be assaulted and stabbed. To add to the injury, Defendants pepper-sprayed Plaintiff while he was prone down with a stab wound.

Several courts have found that inmates with mental health problems must be housed separately from non-mental health-needs inmates, or separately from known violent or predatory inmates or known gang members. CDCR and Defendants have adopted this practice for years as they have full knowledge of the dangers of housing EOP inmates with the regular general population.

Plaintiff filed a 602 for failure to protect and for the malicious pepper-spraying. Plaintiff did a videotaped interview alleging his claims. After doing this, staff (Defendants) started to retaliate in different ways, including by taking more than $1,090.00 worth of Plaintiff's personal

property. Defendants laughed at Plaintiff for running from the assault. Defendants would call Plaintiff a snitch for filing the 602. Defendants made several threats against Plaintiff to cause him physical harm. They threatened to put Plaintiff in the lower yard when Building #4 STG-II Two-Fivers were having yard, and informed them that Plaintiff had given up information about the Two-Fivers who had stabbed Plaintiff. Even though Plaintiff never provided any information, the fact that officers said that he did put Plaintiff's life and safety at great risk, such as when Lieutenant John Doe threatened Plaintiff in front of the other Defendants to get STGs to assault or stab Plaintiff if he filed any staff complaint and identified the officer by name or badge.

Because Plaintiff was still recovering from his stab wound and Defendants failure to protect him, his fear became so real that Plaintiff believed Defendants would carry out their threats. This really prevented Plaintiff from filing any other 602s against involved staff, or any staff. The chilling effect is part of retaliation under the First Amendment.

The fear of Defendants carrying out their threats, and the reality of possibly being assaulted or stabbed again, justified Plaintiff's failure to comply with the requirement to exhaust his administrative procedures. The fear imposed on Plaintiff by Defendants' threats made any available 602 remedies unavailable.

Plaintiff requests monetary damages, including punitive damages, costs of suit, and attorney's fees.

## IV.   PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston

Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).  "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him or her of rights secured by the Constitution or federal law.  Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law").  A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743).  This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

### A.      Official and Individual Capacities

Plaintiff brings this action against Defendants in their official and individual capacities. Plaintiff may not bring a suit for damages against Defendants in their official capacities.  "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities." Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted).  However, the Eleventh Amendment does not bar suits seeking damages against state officials in their personal capacities, Hafer v. Melo, 502 U.S. 21, 30 (1991); Porter v. Jones, 319 F.3d 483, 491 (9th Cir. 2003), or suits for declaratory or injunctive

relief brought against state officials in their official capacities, Austin v. State Indus. Ins. System, 939 F.2d 676, 680 fn.2 (9th Cir. 1991).  Therefore, Plaintiff fails to state a claim for damages against Defendants in their official capacities, but he is not barred by the Eleventh Amendment from seeking injunctive or declaratory relief against Defendants in their official capacities, or from seeking money damages from Defendants in their individual capacities.

### B. Supervisory Liability and Personal Participation

Plaintiff names defendants who hold supervisory positions, such as the Warden and the CDCR Director of Adult Operations.  A supervisor is only liable for the constitutional violations of . . . subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.  There is no *respondeat superior* liability under [§] 1983."  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted).  Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights.  Iqbal, 556 U.S. at 676; Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009).  Therefore, to the extent that Plaintiff seeks to impose liability upon any of the defendants in their supervisory capacity, Plaintiff fails to state a claim.

Under section 1983, Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (emphasis added).  Plaintiff must demonstrate that each defendant, even a Doe defendant, through his or her own individual actions, violated Plaintiff's constitutional rights.  Iqbal, 556 U.S. at 676-77. Plaintiff must link the named defendants to the participation in the violation at issue.  Id. at 662; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934 (9th Cir. 2002). There must exist some causal connection between the conduct of each named defendant and the violation at issue.  Iqbal, 556 U.S. at 676-77; Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-75(9th Cir. 2013); Lacey v. Maricopa County, 693 F.3d 896, 915-16 (9th Cir. 2012) (en banc); Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 2101 (2012).

In the Complaint, Plaintiff fails to allege facts showing that any of the <u>individual</u> Defendants, including individual Doe defendants, personally acted against him. Plaintiff fails to attribute any personal act to any particular Defendant. Plaintiff refers to "Defendants" or "Doe defendants" throughout the Complaint and alleges that they collectively failed to protect Plaintiff or retaliated against Plaintiff. Plaintiff cannot state a claim against any of the Defendants unless he demonstrates in his allegations that the Defendant, identified by name or Doe defendant number, personally acted or failed to act, violating Plaintiff's rights. Plaintiff may not attribute liability to a group of defendants, but must "set forth specific facts as to each individual defendant's" deprivation of his rights. <u>Leer v. Murphy</u>, 844 F.2d 628, 634 (9th Cir. 1988); <u>see also</u> <u>Taylor</u>, 880 F.2d at 1045.

Plaintiff shall be granted an opportunity to amend the complaint, to cure this deficiency. To state a claim against a defendant, or a particular Doe Defendant, Plaintiff must <u>name</u> the defendant and allege <u>facts</u> showing what that <u>individual</u> defendant did or failed to do. Plaintiff must allege personal acts by each defendant, showing that each defendant acted in a way that violated Plaintiff's rights and caused him harm. Plaintiff has not done so and therefore fails to state a cognizable claim against any of the Defendants.

Plaintiff shall be granted leave to file a First Amended Complaint curing the deficiencies in his claims identified by the court. The court shall set forth the legal standards in the following paragraphs for an Eighth Amendment failure-to-protect claim, Eighth Amendment excessive force claim, and First Amendment retaliation claim. Plaintiff is advised to review the legal standards before deciding which claims to bring in the First Amended Complaint.

**C.      Failure to Protect**

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. <u>Morgan v. Morgensen</u>, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. <u>Farmer v. Brennan</u>, 511 U.S. 825, 832-33 (1994) (internal citations and quotations omitted). Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. <u>Id.</u> at 833;

Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff. E.g., Farmer, 511 U.S. at 847; Hearns, 413 F.3d at 1040.

To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent to a serious threat to the inmate's safety." Farmer, 511 U.S. at 834. The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently "substantial risk of serious harm" to his future health. Id. at 843 (citing Helling v. McKinney, 509 U.S. 25, 35 (1993)). The Supreme Court has explained that "deliberate indifference entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." Farmer, 511 U.S. at 835. The Court defined this "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." Id. at 836-37.

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Id. at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." Id. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995). To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. Farmer, 511 U.S. at 842; Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).

### D. **Excessive Force**

Plaintiff alleges that he was pepper-sprayed by Defendants after he was assaulted by another inmate and was in a prone position on the ground.

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation

marks and citations omitted).  The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries)).  However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted).  "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

### E. Retaliation

"Prisoners have a First Amendment right to file grievances [and lawsuits] against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). To state a cognizable retaliation

claim, Plaintiff must establish a nexus between the retaliatory act and the protected activity. Grenning v. Klemme, 34 F.Supp.3d 1144, 1153 (E.D. Wash. 2014).

### F. Doe Defendants

Plaintiff names Doe defendants in this action. Unidentified, or "John Doe" defendants must be named or otherwise identified before service can go forward. "As a general rule, the use of 'John Doe' to identify a defendant is not favored." Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980). Plaintiff is advised that John Doe or Jane Doe defendants cannot be served until Plaintiff has identified them as actual individuals and amended his complaint to substitute names for John Doe or Jane Doe. For service to be successful, the Marshal must be able to identify and locate defendants.

### G. Relief Requested

Plaintiff requests attorney's fees as relief in this case. With regard to attorney's fees, "[i]n any action or proceeding to enforce a provision of section[] 1983. . . , the court, in its discretion, may allow the prevailing party. . . reasonable attorney's fees. . . ." 42 U.S.C. § 1988(b). Plaintiff's contention that he is entitled to attorney's fees if he prevails is without merit. Plaintiff is representing himself in this action. Because Plaintiff is not represented by an attorney, he is not entitled to recover attorney's fees if he prevails. See Friedman v. Arizona, 912 F.2d 328, 333 n.2 (9th Cir. 1990), superseded by statute as stated in Warsoldier v. Woodford, 418 F.3d 989 (9th Cir. 2005); Gonzalez v. Kangas, 814 F.2d 1411, 1412 (9th Cir. 1987); see also Rickley v. Cnty. of Los Angeles, 654 F.3d 950, 954 (9th Cir. 2011) ("The Court accordingly adopted a per se rule, categorically precluding an award of attorney's fees under § 1988 to a pro se attorney-plaintiff.") Therefore, Plaintiff is not entitled to attorney's fees if he prevails in this action.

## V. CONCLUSION AND ORDER

For the reasons set forth above, the court finds that Plaintiff fails to state any cognizable claims in the Complaint against any of the individual Defendants. Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires." Plaintiff shall be granted leave file an amended complaint within thirty days. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

The amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights. Iqbal, 556 U.S. at 678; Jones, 297 F.3d. at 934. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Iqbal at 678 (quoting Twombly, 550 U.S. at 555). There is no *respondeat superior* liability, and each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 677. Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones, 297 F.3d at 934 (emphasis added). Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of adding new defendants for unrelated issues. Plaintiff should also note that he has not been granted leave to add allegations of events occurring after the initiation of this suit on December 23, 2019.

Twenty-five pages is sufficient for Plaintiff to state his allegations and claims and submit any exhibits. Plaintiff is limited to 25 pages <u>total</u> in the First Amended Complaint, including exhibits. In addition, the First Amended Complaint must be written in legible, double-spaced or larger text or handwriting. The court shall strike Plaintiff's First Amended Complaint if it does not comply with these guidelines.

Plaintiff is advised that an amended complaint supercedes the original complaint, Lacey, 693 F.3d at 907 n.1, and it must be complete in itself without reference to the prior or superceded pleading. Local Rule 220. Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Based on the foregoing, the court finds that Plaintiff fails to state any cognizable claims in the Complaint against any of the individual Defendants upon which relief may be granted under § 1983;

2. Plaintiff's Complaint is dismissed for failure to state a claim, with leave to amend

within **thirty (30) days** from the date of service of this order:

3. The Clerk's Office shall send Plaintiff a civil rights complaint form;
4. Plaintiff shall caption the amended complaint "First Amended Complaint" and refer to the case number 1:19-cv-01786-NONE-GSA-PC; and
5. Plaintiff's failure to comply with this order shall result in a recommendation that this case be dismissed.

IT IS SO ORDERED.

Dated:   **February 25, 2021**             **/s/ Gary S. Austin**
                                        UNITED STATES MAGISTRATE JUDGE